**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Crim. No. 89CR0268-J |
| Plaintiff, ) | |
| v. ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| KURTISS LEE BRISTOW, ) | |
| Defendant. ) | |

Before the Court is Defendant Kurtiss Lee Bristow's ("Defendant") Motion to Dismiss Supervised Release Revocation Proceedings. [Doc. No. 254.]  For the reasons stated below, the Court **DENIES** this Motion.

### Background

On April 23, 1990, Defendant was sentenced to 163 months in custody and five years of supervised release for conspiracy to manufacture methamphetamine and possession of metham-phetamine with intent to distribute.  (Pet. for Warrant at 1.)  On April 18, 2002, Defendant began serving his five-year term of supervised release.  (*See* Mot. to Dismiss at 1.)  Defendant's term of supervised release was set to expire on April 18, 2007.  (*Id.* at 4.)  On September 30, 2004, United States Probation Officer Martin A. Andrews filed a Petition for Warrant alleging that Defendant had violated conditions of his supervised release.  (Pet. for Warrant at 2.)  The

89CR0268J

Petition for Warrant was unsworn.  (*See id.*)  The Petition for Warrant set forth the following

allegations of noncompliance:

> 1. On September 24, 2004, Mr. Bristow failed to comply with drug testing by using a device to submit a fraudulent urine sample.
>
> 2. On April 15 and 19, June 21, August 30, September 13 and 23, 2004, Mr. Bristow failed to submit urine samples at Mental Health Systems, Inc. as evidenced by reports of stall.

(*Id.*)

On January 7, 2005, Mr. Andrews filed an Amended Petition for Warrant.  [Doc. No.

242.]  Unlike the original Petition for Warrant, the Amended Petition was sworn.  (*See* Am. Pet.

for Warrant.)  The Amended Petition did not state the basis for probable cause on its face, but

rather stated that probable cause was based on attached documents.  However, the record did not

show that any documents establishing probable cause accompanied the Amended Petition at the

time the warrant was issued.  The Court thus concluded that the Amended Petition was insuffi-

cient to support a finding of probable cause.  [*See* Doc. No. 262.]  Despite the insufficiency of

the Amended Petition, the Court determined that it still had jurisdiction to revoke supervised

release.  (*See* June 29, 2007 Order at 6.)  The Court found that Defendant's term of supervision

was tolled during his status as a fugitive and denied his Motion to Dismiss Supervised Release

Revocation Proceedings.  (*Id.*)  Defendant subsequently informed the Court that he had not had

adequate time to review the Government's briefing regarding the issue of tolling, and he

requested additional time to brief this issue.  The Court granted this request on June 29, 2007,

and Defendant subsequently filed a supplemental brief addressing the tolling issue.  [*See* Doc.

Nos. 260, 265.]

At the Court's direction, United States Probation Officer Lissa Williams submitted a

Second Amended Petition for Warrant ("SAP") on July 26, 2007.  [Doc. No. 264.]  In contrast to

the Amended Petition, the SAP describes in detail the two grounds for revocation of supervised

release, namely, that Defendant failed to comply with drug testing by using a device to submit a

fraudulent urine sample and that he failed to submit urine samples as instructed.  (*See* SAP at 3.)

In addition, the Violation Sentencing Summary accompanying the SAP states that on November

22, 2004, Defendant contacted the United States Probation Office ("USPO") by phone.

89CR0268J

(Summary at 1.)  Officer Trisha Skalmusky informed Defendant that he had an active federal

warrant for his arrest and directed Defendant to turn himself in.  (*Id.*)  Defendant told Officer

Skalmusky that he would call the USPO to arrange for self-surrender after he had contacted his

attorney and employer.  (*Id.*)  However, according to the Violation Sentencing Summary, the

USPO had no further contact with Defendant after November 22, 2004.  (*Id.*)

Defendant has attached to his supplemental brief the transcript of his bond hearing before

Magistrate Judge Ruben B. Brooks.  (Def.'s Supp. Brief Ex. C.)  At the hearing, Assistant

United States Attorney Sherri Hobson stated that in November 2004, the USPO informed

Defendant that there was a bench warrant for his arrest.  (Rep.'s Tr. at 6.)  AUSA Hobson stated

that there was a notation in Defendant's probation file where Defendant was informed that there

was a bench warrant for his arrest.  (*Id.* at 6.)  Judge Brooks then asked the parties whether

Defendant had been avoiding the USPO.  (*Id.* at 9.)  Officer Williams stated that Defendant

contacted the USPO on November 22, 2004, after he attempted to submit urine samples at a test

center and was told that he had been terminated from the drug testing program.  (*Id.* at 10.)

Officer Williams further stated that Defendant was informed that he had been terminated from

the program because a bench warrant had been issued for his arrest.  (*Id.* at 10.)  According to

Officer Williams, Defendant never contacted the USPO again, nor did the USPO attempt to

contact Defendant.  (*Id.*)  Officer Williams stated that USPO did not initiate further contact with

Defendant because the officer handling Defendant's case retired.  (*Id.* at 10-11.)  Defendant

denies that he failed to contact the USPO after he was informed that he had an outstanding

warrant.  (Def.'s Supp. Brief at 3.)  However, he provides no details as to any further contact he

had with the USPO.

In addition to the bond hearing transcript, Defendant has attached to his supplemental

brief two documents from the Internal Revenue Service ("IRS") and the Social Security

Administration ("SSA").  Defendant has attached a notice from the IRS for failure to pay taxes.

(Def.'s Supp. Brief Ex. D-1.)  The notice, which is dated April 16, 2004, lists a San Diego

residence as Defendant's address.  (*See id.*)  He has also attached a Social Security Statement

89CR0268J

1  which is dated March 20, 2007, and lists the same San Diego residence as his address.  (Def.'s

2  Supp. Brief Ex. D-2.)

3  ***Discussion***

4  Defendant argues that his term of supervised release was not tolled because he never

5  entered fugitive status.  (*See* Def.'s Supp. Brief at 2.)  Specifically, Defendant argues that he did

6  not abscond from supervision because he has resided at the same San Diego address for several

7  years.  (*See id.*)  Defendant's brief essentially raises the question of what constitutes fugitive

8  status for purposes of tolling a term of supervised release.  The Court therefore turns to recent

9  case law to determine how the Ninth Circuit has defined fugitive status.

10  A defendant's term of supervised release is tolled when he becomes a fugitive.  *United*

11  *States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992). The Ninth Circuit delineated what constitutes

12  "fugitive status" in *United States v. Murguia-Oliveros*:

13  We publish this opinion to clarify what constitutes "fugitive status" for purposes of tolling a term of supervised release.  Murguia-Oliveros argues that he could not
14  become a fugitive merely by failing to comply with the terms of his supervised release.  We disagree.
15

16  421 F.3d 951, 953 (9th Cir. 2005).  In *Murguia-Oliveros*, the defendant was prohibited under

17  the terms of his supervised release from reentering the United States, and he was required to

18  report to the United States Probation Office ("USPO") within 72 hours of any reentry.  *Id.* at

19  952.  The defendant reentered the United States, and his probation officer sent a letter to his last

20  known address instructing him to report.  *Id.*  The defendant failed to report and did not make

21  any contact with the probation officer.  *Id.*  A valid warrant for arrest did not issue during the

22  term of the defendant's supervised release.  *Id.*  However, the district court assumed jurisdiction

23  and revoked supervised release because it concluded that the defendant's term of supervised

24  release was tolled because his status was equivalent to that of a fugitive.  *Id.*  The Ninth Circuit

25  affirmed, concluding that the defendant was a fugitive because he absconded from serving the

26  terms of his supervised release by reentering the United States and not contacting his probation

27  officer.  *Id.* at 954.  Because *Murguia-Oliveros* provides a detailed explanation of what consti-

28  tutes fugitive status, this Court examines the opinion at length.

89CR0268J

1    In its central holding, the Ninth Circuit emphasized that absconding from serving the

2    terms of supervised release triggers fugitive status, stating, "We therefore hold that Murguia-

3    Oliveros became a fugitive because he effectively absconded from serving the terms of his

4    supervised release." *Id.*  The Ninth Circuit then distinguished the tolling of supervised release

5    from the fugitive disentitlement doctrine.[1]  *Id.*  The Ninth Circuit stated that cases applying the

6    fugitive disentitlement doctrine were not analogous to Murguia-Oliveros' situation because the

7    doctrine requires the government to show that a defendant has fled or has hidden from the

8    jurisdiction of the court.  *Id.*  The fugitive disentitlement doctrine "does not apply when the

9    convicted defendant fails to comply with the conditions of probation in failing to report to the

10   probation office."  *Id.*  In contrast, the Ninth Circuit noted that tolling a term of supervised

11   release can apply when a defendant fails to comply with the terms of his release, because tolling

12   is not as severe a sanction as dismissal of a defendant's appeal from a conviction.  *See id.*  The

13   Court further noted that tolling for failure to comply with supervised release terms is warranted

14   because "we should not reward those who violate the terms of their supervised release and avoid

15   arrest until after the original term expires."  *Id.*

16   The Ninth Circuit also noted that Murguia-Oliveros' reliance on criminal statute of

17   limitations cases was misplaced.  *Id.*  The Ninth Circuit noted that under 18 U.S.C. § 3290, a

18   statute of limitation does not apply to "any person fleeing from justice."  *Id.* (quoting 18 U.S.C.

19   § 3290.)  The Ninth Circuit explained that for 18 U.S.C. § 3290 to apply, the government must

20   demonstrate that a defendant concealed himself with an intent to avoid prosecution.  *Id.*  The

21   Ninth Circuit found that this standard does not apply to the tolling of a term of supervised

22   release.  *See id.*  This is because the purpose of 18 U.S.C. § 3290 is to prevent a defendant from

23   receiving the benefit of a statute of limitations when his intent is to evade prosecution, while the

24   purpose of supervised release "is to establish a period of readjustment" and "to protect the

25   public."  *Id.*  Accordingly, the Ninth Circuit found that supervised release should be tolled for

26

27   _____

28        [1] The fugitive disentitlement doctrine authorizes dismissal of a defendant's appeal from a conviction when the defendant becomes a fugitive during the appellate process.

89CR0268J

1  the period of time during which the defendant "by virtue of his own wrongful act, . . . was not in

2  fact observing the terms of his supervised release." *Id.*

3       Here, the Court must determine whether Defendant's actions were sufficient to trigger

4  fugitive status for purposes of tolling his term of supervised release.  It is not necessary for the

5  Government to demonstrate that Defendant fled or hid from the jurisdiction of the Court.  *See id.*

6  Rather, Defendant can be considered a fugitive and his term of supervised release can be tolled

7  if he "effectively absconded from serving the terms of his supervised release." *See id.*  The facts

8  support a finding that Defendant effectively absconded from serving the terms of his supervised

9  release.  Similar to the supervisee in *Murguia-Oliveros*, Defendant was directed to report to the

10  USPO after it became apparent that he had violated the terms of his supervised release.  (*See*

11  Summary at 1.)  Like the defendant in *Murguia-Oliveros*, Defendant failed to report.  (*See id.*)

12  Although Defendant summarily denies the USPO's assertion that he had no contact with the

13  USPO after being informed of his outstanding warrant, Defendant offers no evidence that he

14  subsequently attempted to report.  There is no indication that Defendant was subject in fact to

15  the terms and conditions of supervised release at any time after he contacted the USPO on

16  November 22, 2004.  *See United States v. Vallejo*, 69 F.3d 992, 995 (9th Cir. 1995) (stating that

17  a term of supervised release runs only when "the defendant becomes subject in fact to the terms

18  and conditions of supervised release").  Defendant thus became a fugitive when he failed to

19  report to probation and effectively absconded from supervision.  *See United States v. Delamora*,

20  451 F.3d 977, 980 (9th Cir. 2006) ("[Defendant] became a fugitive when he stopped reporting to

21  his probation officer and absconded from supervision.").

22       Defendant argues that *Murguia-Oliveros* is inapplicable to the facts of his case because

23  *Murguia-Oliveros* dealt with a defendant who left the area where he was supposed to serve his

24  supervised release.  (*See* Def.'s Supp. Brief at 2.)  Specifically, the defendant in *Murguia-*

25  *Oliveros* reentered the United States in violation of the terms of his supervised release.

26  Defendant argues that because he "never absconded or left the area permitted by the terms of his

27  release," he never entered fugitive status.  (*Id.* at 3.)  However, the Ninth Circuit held in

28  *Murguia-Oliveros* that a defendant can become a fugitive "merely by failing to comply with the

89CR0268J

terms of his supervised release." *Id.* at 953.  Contrary to Defendant's assertions, the Government is not required to make an additional showing that Defendant fled or hid from the jurisdiction of the Court.  *See id.* at 954.  The defendant in *Murguia-Oliveros* became a fugitive not simply because he left the area in which he was required to serve his supervised release, but because he also failed to contact his probation officer as required.  *See id.* at 955 ("Murguia-Oliveros was then ordered by his probation officer to report, but did not do so.  We therefore hold that Murguia-Oliveros became a fugitive because he effectively absconded from serving the terms of his supervised release.").  After carefully examining the text of the *Murguia-Oliveros* opinion, the Court can discern no requirement that a defendant must leave the area permitted by the terms of his release in order to trigger fugitive status.

Defendant also argues that his case is distinguishable from *Murguia-Oliveros* because unlike the USPO in that case, the USPO for this district did not send a letter to his last address instructing him to report once it became apparent that he had violated the terms of his supervised release.  (Def.'s Supp. Brief at 2, 4.)  Defendant appears to assert that the USPO did not make adequate efforts to contact Defendant and instruct him to surrender.  (*Id.* at 3-4.)  However, the parties do not dispute that Defendant was aware that he had violated the terms of his supervised release.  On September 24, 2004, Defendant left a recorded telephone message for his supervising probation officer stating that he attempted to use a device to submit a fraudulent urine sample.  (SAP at 3.)  Further, Defendant contacted the USPO on November 22, 2004, to find out why he had been terminated from drug testing.  (Def.'s Supp. Brief at 4.)  According to the Violation Sentencing Summary, the USPO informed Defendant at this time that there was a warrant for his arrest and instructed Defendant to report to the USPO.  (Summary at 1.)  Although the USPO failed to contact Defendant again after instructing him to surrender, *Murguia-Oliveros* does not indicate that the USPO's failure to do so would negate Defendant's fugitive status.  In *Murguia-Oliveros*, the USPO sent the defendant a letter requesting that he report to his probation officer.  Brief of Plaintiff–Appellee at 4, *United States v. Murguia-Oliveros*, No. 04-50612 (9th Cir. March 3, 2005).  The USPO had no further contact with the defendant until he was arrested nearly a year later.  *Id.*  Despite this, the Ninth Circuit upheld the

89CR0268J

district court's determination that the defendant was a fugitive for failure to comply with the terms of his supervised release. 421 F.3d at 954. There is thus no indication that a USPO is required to repeatedly contact a defendant before that defendant can be considered a fugitive.

In sum, Defendant "effectively absconded from serving the terms of his supervised release" by failing to report to probation at any time after being informed that there was a warrant for his arrest. *See id.* A defendant's failure to report to probation is sufficient to trigger fugitive status. *See id.* The Court thus **FINDS** that Defendant was in fugitive status. Defendant's term of supervised release is therefore tolled from the date on which the amended warrant issued for his arrest to the date on which his term of supervised release was set to expire. The amended warrant issued on January 19, 2005, and Defendant's term of supervised release was set to expire April 18, 2007. Defendant's term of supervised release was thus tolled for two years and three months past April 18, 2007. Defendant was arrested on June 10, 2007, well within the tolling period. Because Defendant's term of supervised release had not yet expired when he was arrested, the Court may properly assume jurisdiction to revoke supervised release. The Court therefore **DENIES** Defendant's Motion to Dismiss Supervised Release Revocation Proceedings.

***Conclusion***

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss Supervised Release Revocation Proceedings.

**IT IS SO ORDERED**.

DATED:  August 16, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All counsel of record

89CR0268J