1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 89CR0268-J |
| Plaintiff, | ) | |
| v. | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| KURTISS LEE BRISTOW, | ) | |
| Defendant. | ) | |

Before the Court is Defendant Kurtiss Lee Bristow's ("Defendant") Motion to Dismiss Supervised Release Revocation Proceedings. [Doc. No. 273.]  For the reasons stated below, the Court **DENIES** this Motion.

### *Background*

On April 23, 1990, Defendant was sentenced to 163 months in custody and five years of supervised release for conspiracy to manufacture methamphetamine and possession of metham-phetamine with intent to distribute.  (Pet. for Warrant at 1.)  Judge Enright ordered several conditions of supervised release, including the following:

/X/ That he participate in an alcohol or drug counseling program as directed by the Probation Officer.

/X/ That he submit to tests from time to time at the direction of his Probation Officer to determine his use of narcotics.

(Mot. to Dismiss Ex. A.)

On April 18, 2002, Defendant began serving his five-year term of supervised release. (*See* Mot. to Dismiss at 2.)  On April 26, 2002, Defendant authorized Mental Health Systems, Inc. ("MHS") to release confidential information to the Probation Office.  (Opp'n to Mot. to Dismiss Ex. 2.)  The confidential information to be released included "date of entrance to the program, attendance records, urine testing results, type, frequency and effectiveness of therapy, general adjustment to program rules, type and dosage of medication(s), response to treatment, test results (psychological, vocational, etc.), and date of and reason for withdrawal from program, prognosis."  (*Id.*)  The release stated that the information was "to be used in connection with my participation in the aforementioned program which has been made a condition of my supervision."  (*Id.*)

On May 12, 2003, Probation Officer Martin A. Andrews issued a Report on Offender Under Supervision ("Report").  (Opp'n to Mot. to Dismiss Ex. 3.)  Officer Andrews noted that Defendant had been referred to MHS's "drug aftercare program."  (*Id.*)  According to the Report, Defendant violated the special condition of supervision that he participate in this program.  (*Id.* at 2.)  Specifically, the Report alleged that on May 16, 2002, Defendant "failed to report to Mental Health Systems, Inc. to submit a urine sample, as required, as evidenced by report of stall."  (*Id.*)  The Report also alleged that Defendant had consumed alcohol prior to reporting for urine testing in violation of MHS program rules.  (*Id.*)  According to the Report, Defendant was advised that "should he continue to violate MHS program rules, he would be terminated from the drug aftercare program and be required to submit urine samples at the U.S. Probation Office."  (*Id.*)  The Report also noted that Defendant was temporarily working in the Eastern District of California and was required to submit regular urine samples at the direction of the Probation Office for that District.  (*Id.*)  The Report stated that once Defendant returned to this District, he would be required to participate in formal drug abuse counseling as offered through MHS and

89CR0268J

1   would be retained in the most frequent phase of testing.  (*Id.*)  The Court adhered to the Report's

2   recommendation and did not take action on the allegations of noncompliance.  (*Id.* at 3.)

3        Defendant's term of supervised release was set to expire on April 18, 2007.  (*Id.* at 4.)

4   However, on September 30, 2004, United States Probation Officer Andrews filed a Petition for

5   Warrant alleging that Defendant had violated conditions of his supervised release.  (Pet. for

6   Warrant at 2.)  The Petition for Warrant was unsworn.  (*See id.*)  The Petition for Warrant

7   alleged that Petitioner violated the Special Condition that he "[p]articipate in a program of drug

8   or alcohol abuse treatment."  (*See id.*)  Specifically, the Petition for Warrant alleged the

9   following:

10       1.  On September 24, 2004, Mr. Bristow failed to comply with drug testing by using
     a device to submit a fraudulent urine sample.

11
12       2. On April 15 and 19, June 21, August 30, September 13 and 23, 2004, Mr. Bristow
     failed to submit urine samples at Mental Health Systems, Inc. as evidenced by reports
     of stall.

13

14   (*Id.*)  Records from MHS titled "Monthly Treatment Report" and "MHS Stalls Report" indicate

15   that in 2004, Defendant stalled on April 15, April 19, June 21, August 30, September 13, and

16   September 23.  (Mot. to Dismiss Ex. C.)

17        On January 7, 2005, Officer Andrews filed an Amended Petition for Warrant.  [Doc. No.

18   242.]  Unlike the original Petition for Warrant, the Amended Petition was sworn.  (*See* Am. Pet.

19   for Warrant.)  The Amended Petition did not state the basis for probable cause on its face, but

20   rather stated that probable cause was based on attached documents.  However, the record did not

21   show that any documents establishing probable cause accompanied the Amended Petition at the

22   time the warrant was issued.  On June 29, 2007, the Court concluded that the Amended Petition

23   was insufficient to support a finding of probable cause, but ordered the parties to brief the issue

24   of whether Defendant's term of supervised release had been tolled.  [*See* Doc. No. 262.]  On

25   August 16, 2007, the Court determined that it still had jurisdiction to revoke supervised release.

26   [Doc. No. 266.]  The Court found that Defendant's term of supervision was tolled during his

27   status as a fugitive and denied his Motion to Dismiss Supervised Release Revocation Proceed-

28   ings.  (Aug. 16, 2007 Order at 8.)

On September 10, 2007, the Court held an evidentiary hearing on the allegations that Defendant had violated the terms of his supervised release.  [Doc. No. 267.]  At the evidentiary hearing, Defendant argued that the Probation Office had exceeded the Court's delegation of authority with regard to urinalysis testing.  Specifically, as a special condition of supervised release, Judge Enright had ordered Defendant to "submit to tests from time to time at the direction of his Probation Officer to determine his use of narcotics."  (Mot. to Dismiss Ex. A.)  Citing *United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005), Defendant argued that because the Court did not set a maximum number of urinalysis tests to which he could be subjected, the Probation Office was limited to three total tests under 18 U.S.C. § 3583(d).  Defendant further argued that the Probation Office exceeded its authority by testing him more than three times.  The Court ordered the parties to brief the issue.  Defendant submitted the instant Motion to Dismiss.  [*See* Doc. No. 273.]  The Government filed an Opposition.  [*See* Doc. No. 274.]  Defendant filed a Reply.  [Doc. No. 276.]

### Discussion

In his Motion to Dismiss, Defendant argues that his alleged failure to submit to urinalysis testing did not constitute a violation of supervised release because the Probation Office lacked authority to order him to submit to testing.  (*See* Mot. to Dismiss at 3.)  In *United States v. Stephens*, the Ninth Circuit clarified its interpretation of the drug-testing provisions of 18 U.S.C. § 3583(d).  *See* 424 F.3d at 882.  The Ninth Circuit found that under 18 U.S.C. § 3583(d), those on supervised release must be subjected to "at least" three drug tests, but Congress left it to the district courts' discretion to require more testing.  *Id.*  Therefore, a district court, and not a parole officer, must decide whether a supervisee should be subject to more than three tests.  *See id.* at 878.  Accordingly, a district court cannot allow a probation officer to determine "the maximum number of *non-treatment* drug tests to which [a defendant] would be subjected during the course of his supervised release."  *Id.*  Here, Defendant argues that the record indicates that he was subjected to more than three drug tests before the incidents which allegedly violated the terms of his supervised release took place.  (Mot. to Dismiss at 4-5.)  According to Defendant, *Stephens*

89CR0268J

1  precluded any additional testing, regardless of whether the tests ordered resulted in conduct that

2  would be in violation of the terms of supervised release.  (*Id.* at 5)

3      In opposition, the Government argues that *Stephens* is inapplicable to testing related to

4  drug treatment.  (Opp'n to Mot. to Dismiss at 4.)  The Government asserts that because the

5  record indicates that Defendant's testing was conducted pursuant to a drug treatment program,

6  the Court was not required to set a maximum number of drug tests.  (*See id.*)

7      The Court first examines whether *Stephens* should be retroactively applied to Defendant's

8  case.  The Court then examines whether the urinalysis tests were penological in nature or were

9  done in the course of drug treatment.  Finally, the Court examines whether dismissal of the

10  supervised release revocation proceedings is an appropriate remedy under *Stephens*.

11  **I.    Whether *Stephens* Applies to Defendant's Terms of Supervised Release**

12      As a preliminary matter, the Court must establish whether *Stephens* governs the drug-

13  testing provisions of Defendant's terms of supervised release.  Defendant's supervised release

14  commenced April 18, 2002, and was set to expire on April 18, 2007.  (*See* Mot. to Dismiss at 2.)

15  Defendant allegedly violated the terms of his supervised release on April 15, April 19, June 21,

16  September 13, September 23, and September 24, 2004.  (Pet. for Warrant at 2.)  *Stephens* was

17  decided on September 2, 2005.  Accordingly, *Stephens* had not yet been decided when Defen-

18  dant allegedly violated the terms of his supervised release.  The Court therefore must determine

19  whether *Stephens* applies retroactively to Defendant's case.

20      The Ninth Circuit has not explicitly indicated whether *Stephens* applies retroactively.

21  *Stephens* does not involve a new constitutional rule and instead interprets a federal statute,

22  namely, 18 U.S.C. § 3583(d).  In a non-constitutional context, three factors are used to determine

23  whether a judicial decision should be applied retroactively: "(1) whether the decision establishes

24  a new rule of law; (2) whether retroactive application will further or retard the purposes of the

25  rule in question; and (3) whether applying the new decision will produce substantially inequita-

26  ble results."  *United States v. Oliveros-Orosco*, 942 F.2d 644, 646-47 (9th Cir. 1991).

27  "[R]etroactive application of judicial decisions is the rule and not the exception."  *United States*

28  *v. Gonzalez-Sandoval*, 894 F.2d 1043, 1052 (9th Cir. 1990) (quotations omitted).

89CR0268J

The Court finds that retroactive application is appropriate in this case. First, *Stephens* did not announce a new rule of law, but merely clarified the Ninth Circuit's interpretation of 18 U.S.C. § 3583(d). Second, retroactive application will further *Stephens*' purpose of avoiding the "improper delegation of the district court's duty to set the maximum number of *non-treatment* drug tests*" to which a defendant may be subject during the course of his supervised release. *See* 424 F.3d at 878. Third, no facts have been presented indicating that it would be substantially inequitable to apply *Stephens* in determining whether Defendant was subjected to an impermissible number of drug tests. Accordingly, the Court **FINDS** that *Stephens* applies to Defendant's case.

## II.   Whether the Urinalysis Testing Was Penological or Related to Treatment

The Government asserts that under *Stephens*, a district court need not set a maximum number of drug tests where a defendant is required to submit to testing within a drug treatment program. (*See* Opp'n to Mot. to Dismiss at 4.) The Government further argues that no *Stephens* error was committed in this case because the urinalysis testing to which Defendant was subjected was part of the drug treatment program authorized by the Court. (*See id.*)

In *Stephens*, the Ninth Circuit noted that "Congress has not required that the courts micro-manage drug treatment programs by setting a maximum number of in-treatment tests." 424 F.3d at 883. The Ninth Circuit then explained that district courts are permitted to delegate the details of drug testing where the testing occurs within the treatment context:

> Where the district court specifies that the defendant shall participate in a drug treatment program, it may properly delegate to the probation officer the responsibility for selecting the program. The drug treatment professionals then have the responsibility to design the course of treatment, including the frequency of in-treatment testing, to ensure that the treatment is effective.

*Id.* The Ninth Circuit then distinguished between testing "done as a mandatory condition of supervised release and testing done in the course of special condition drug treatment." *Id.* at 884. According to the Ninth Circuit, "Only for the former case must the district court specify the maximum number of tests." *Id.*

Here, the Court's imposition of the condition that Defendant "submit to tests from time to time at the direction of his Probation Officer to determine his use of narcotics" constituted error

89CR0268J

1  under *Stephens*.  *See* 424 F.3d at 877, 884 (finding that supervised release condition requiring

2  defendant to submit to drug tests "as directed by the probation officer" was impermissible).  The

3  condition contemplates non-treatment drug testing and does not set a maximum number of tests

4  to which Defendant could be subjected.  Thus, the Court **FINDS** that the non-treatment testing

5  condition was an improper delegation of responsibility under *Stephens*.

6       Although the non-treatment testing condition violated *Stephens*, the Court **FINDS** that

7  Defendant was required to submit to in-treatment testing.  Even though the condition regarding

8  non-treatment testing was faulty, the condition ordering Defendant to participate in an alcohol or

9  drug treatment program was permissible under *Stephens*.  The Court was permitted to delegate to

10  the probation officer the responsibility for selecting a drug treatment program.  *See id.* at 883.

11  The Court was also permitted to delegate to drug treatment professionals the responsibility of

12  designing the course of treatment, "including the frequency of in-treatment testing."  *See id.*  The

13  Court therefore was not required to "micro-manage drug treatment programs by setting a

14  maximum number of in-treatment tests."  *See id.*

15       The record reflects that Defendant was properly ordered to participate in a drug treatment

16  program, and that he was required to submit to urinalysis testing pursuant to this program.  As a

17  special condition of supervised release, the Court ordered Defendant to "participate in an alcohol

18  or drug counseling program as directed by the Probation Officer." (*See* Mot. to Dismiss Ex. A.)

19  This condition, along with its delegation of responsibility to the probation officer, was permissi-

20  ble under *Stephens*.  *See* 424 F.3d at 883.  Accordingly, the probation officer was permitted to

21  refer Defendant to MHS for drug and alcohol and treatment.  In the course of his drug treatment

22  program at MHS, Defendant was required to submit to urinalysis testing.  (*See* Mot to Dismiss

23  Ex. C; Opp'n to Mot to Dismiss Exs. 2, 3.)  Testing done in the course of Defendant's drug

24  treatment program was permissible under *Stephens*, even though the Court did not set a

25  maximum number of in-treatment tests.  *See* 424 F.3d at 883.  Defendant was participating in the

26  drug treatment and testing program at MHS at the time the alleged violations of his supervised

27  release occurred.  (*See* Pet. for Warrant at 2.)  Accordingly, Defendant's in-treatment drug tests

28  were not barred by *Stephens*.

89CR0268J

Defendant argues that the drug testing to which he was subjected was penological in nature because his conditions of supervised release did not specify whether his drug treatment program included urinalysis testing. (Reply at 3.) However, *Stephens* does not state that in-treatment drug testing is only permitted where specifically ordered by the district court. Rather, "[t]he requirement of § 3563(b)(9), incorporated by reference into § 3583(d), that the drug treatment be specified '*by the court*,' does not require the district court itself specify the details of the treatment." *Stephens*, 424 F.3d at 883. The Court "cannot be expected to design the particularities of a treatment program." *Id.* (citing *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998). The Court therefore was not required to specify that urinalysis testing was to be included within Defendant's drug treatment program.

Because Defendant was required to submit to in-treatment drug testing as part of the condition that he participate in a drug and alcohol treatment program, the Court **FINDS** that Defendant was not subjected to an impermissible number of drug tests.

**III.   Whether Dismissal is the Proper Remedy for a *Stephens* Error**

Even if Defendant had been subjected to an impermissible number of drug tests, the Court can find no authority supporting Defendant's argument that the proper remedy for a *Stephens* error is dismissal of supervised release revocation proceedings. In *Stephens*, the Ninth Circuit did not order the district court to dismiss supervised release revocation proceedings. Rather, the Ninth Circuit remanded the case so that the district court could determine the maximum number of drug tests to which the defendant would be required to submit. *See* 424 F.3d at 887 ("We vacate the drug testing provision and remand this case to the district court so that it may determine the maximum number of drug tests to which the defendant must submit while on supervised release."). In fact, the Court has not found any instance where supervised release revocation proceedings were dismissed on the basis that the district court failed to set the maximum number of non-treatment drug tests. Rather, the remedy ordered in these cases is modification of the conditions of supervised release in order to specify the maximum number of drug tests to which the defendant must submit. *See id.* at 887; *United States v. Sigmond*, 186 Fed. Appx. 804, 805 (9th Cir. 2006) ("[W]e vacate the condition of supervised release stating

1  that [defendant] will be subjected to 'at least two periodic drug tests' and remand to the district

2  court to determine the maximum number of tests to which [defendant] must submit while on

3  supervised release."); *United States v. Helem*, 182 Fed. Appx. 728, 729 (9th Cir. 2006) (finding

4  that supervised release condition violated *Stephens* and remanding for re-sentencing); *United*

5  *States v. Rivera*, 163 Fed. Appx. 554, 555 (9th Cir. 2006) (stating that the appropriate remedy for

6  a *Stephens* error is "a motion to modify the conditions of supervised release").

7       Because Defendant was subjected to permissible in-treatment drug testing at the time of

8  the alleged violations of his supervised release, and because Defendant has failed to demonstrate

9  that dismissal is the proper remedy for a *Stephens* error, the Court **DENIES** Defendant's Motion

10  to Dismiss Supervised Release Revocation Proceedings.

11  **IV.  Defendant's Motion to Compel Discovery**

12       Defendant requests "production of records identifying the dates of any and all drug tests

13  ordered by Probation in [Defendant's] case.  This includes the dates for any and all testing that

14  occurred at a probation office or any other private/public facility working at the behest of the

15  probation office supervising [Defendant]."  (Mot. to Dismiss at 5.)  The Government does not

16  oppose Defendant's Motion to Compel Discovery.  The Court **GRANTS** the Motion to Compel

17  Discovery in the event that Defendant requires the use of these records for purposes of appeal.

18

19                                    *Conclusion*

20       For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss

21  Supervised Release Revocation Proceedings.

22       **IT IS SO ORDERED.**

23  DATED:  September 14, 2007

24                                    _____

25                                    HON. NAPOLEON A. JONES, JR.
                                      United States District Judge

26  cc: All counsel of record

27

28

9

89CR0268J