# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )  Crim. No. 89CR0268-J |
| Plaintiff, | ) |
| v. | )  **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| KURTIS LEE BRISTOW, | ) |
| Defendant. | ) |

Before the Court is Defendant Kurtis Lee Bristow's ("Defendant") Supplemental Briefing Regarding his Motion to Dismiss Supervised Release Revocation Proceedings ("Motion"). [Doc. No. 273.] Plaintiff United States of America ("the Government") has filed Supplemental Briefing in Opposition of Defendant's Motion. For the reasons stated below, the Court **DENIES** this Motion.

*Background*

On April 23, 1990, Defendant was sentenced to 163 months in custody and five years of supervised release for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to distribute. (Pet. for Warrant at 1.) District Court Judge Enright ordered several conditions of supervised release, including the following:

    /<u>X</u>/ That he participate in an alcohol or drug counseling program as directed by the Probation Officer.

    /<u>X</u>/ That he submit to tests from time to time at the direction of his Probation Officer to determine his use of narcotics.

(Mot. to Dismiss Ex. A.)

On April 18, 2002, Defendant began serving his five-year term of supervised release. (*See* Mot. to Dismiss at 2.) On April 26, 2002, Defendant authorized Mental Health Systems, Inc. ("MHS") to release confidential information to the Probation Office. (Opp'n to Mot. to Dismiss Ex. 2.) The confidential information to be released included "date of entrance to the program, attendance records, urine testing results, type, frequency and effectiveness of therapy, general adjustment to program rules, type and dosage of medication(s), response to treatment, test results (psychological, vocational, etc.), and date of and reason for withdrawal from program, prognosis." (*Id.*) The release stated that the information was "to be used in connection with my participation in the aforementioned program which has been made a condition of my supervision." (*Id.*)

On May 12, 2003, Probation Officer Martin A. Andrews issued a Report on Offender Under Supervision ("Report"). (Opp'n to Mot. to Dismiss Ex. 3.) Officer Andrews noted that Defendant had been referred to MHS's "drug aftercare program." (*Id.*) According to the Report, Defendant violated the special condition of supervision that he participate in this program. (*Id.* at 2.) Specifically, the Report alleged that on May 16, 2002, Defendant "failed to report to Mental Health Systems, Inc. to submit a urine sample, as required, as evidenced by report of stall." (*Id.*) The Report also alleged that Defendant had consumed alcohol prior to reporting for urine testing in violation of MHS program rules. (*Id.*) According to the Report, Defendant was advised that "should he continue to violate MHS program rules, he would be terminated from the drug aftercare program and be required to submit urine samples at the U.S. Probation Office." (*Id.*) The Report also noted that Defendant was temporarily working in the Eastern District of California and was required to submit regular urine samples at the direction of the Probation Office for that District. (*Id.*) The Report stated that once Defendant returned to this District, he

would be required to participate in formal drug abuse counseling as offered through MHS and would be retained in the most frequent phase of testing. (*Id.*) The Court adhered to the Report's recommendation and did not take action on the allegations of noncompliance. (*Id.* at 3.)

Defendant's term of supervised release was set to expire on April 18, 2007. (*Id.* at 4.) However, on September 30, 2004, United States Probation Officer Andrews filed a Petition for Warrant alleging that Defendant had violated conditions of his supervised release. (Pet. for Warrant at 2.) The Petition for Warrant was unsworn. (*See id.*) The Petition for Warrant alleged that Petitioner violated the Special Condition that he "[p]articipate in a program of drug or alcohol abuse treatment." (*See id.*) Specifically, the Petition for Warrant alleged the following:

> 1. On September 24, 2004, Mr. Bristow failed to comply with drug testing by using a device to submit a fraudulent urine sample.
>
> 2. On April 15 and 19, June 21, August 30, September 13 and 23, 2004, Mr. Bristow failed to submit to urine samples at Mental Health Systems, Inc. as evidenced by reports of stall.

(*Id.*) Records from MHS titled "Monthly Treatment Report" and "MHS Stalls Report" indicate that in 2004, Defendant stalled on April 15, April 19, June 21, August 30, September 13, and September 23. (Mot. to Dismiss Ex. C.)

On January 7, 2005, Officer Andrews filed an Amended Petition for Warrant. [Doc. No. 242.] On September 10, 2007, the Court held an evidentiary hearing on the allegations that Defendant had violated the terms of his supervised release. [Doc. No. 267.] At the evidentiary hearing, Defendant argued that the Probation Office had exceeded the Court's delegation of authority with regard to urinalysis testing. Specifically, as a special condition of supervised release, Judge Enright had ordered Defendant to "submit to tests from time to time at the direction of his Probation Officer to determine his use of narcotics." (Mot. to Dismiss Ex. A.) Citing *United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005), Defendant argued that because the Court did not set a maximum number of urinalysis tests to which he could be subjected, the Probation Office was limited to three total tests under 18 U.S.C. § 3583(d). (*Id.*) Defendant further argued that the Probation Office exceeded its authority by testing him more than three times. Defendant filed a Motion to Dismiss Supervised Release Revocation Proceedings. [Doc.

3

No. 273.] The Government filed an Opposition. [Doc. No. 274.] Defendant filed a Reply. [Doc. No. 276.] On September 14, 2007, the Court denied Defendant's Motion to Dismiss Supervised Release Revocation Proceedings on the grounds that *Stephens* did not apply to drug testing that was administered as a part of treatment and not penological reasons. (Order Denying Def's Mot. to Dismiss at 8.) The Court held that although testing pursuant to the second condition of Judge Enright's order would violate *Stephens*, the drug testing was actually conducted pursuant to the first condition of Judge Enright's order prescribing treatment and was thus permissible. (*Id.* at 7.)

At a hearing on September 17, 2007, Defendant argued that he had recently received evidence showing that the drug testing was not a part of a drug treatment program as the Court understood it to be at the time of the Court's Order. Defendant argued that since testing was done before treatment began and probation officers, instead of treatment professionals, were making decisions about when to test Defendant, the testing was for penological purposes rather than treatment. The Court ordered the Parties to submit supplemental briefing on the issue of whether the drug testing was done as a part of a treatment program or for penological reasons. Defendant submitted the instant Supplemental Briefing in Support of Motion to Dismiss. [Doc. No. 279.] The Government submitted Supplemental Briefing Regarding Defendant's Treatment Program at MHS. [Doc. No. 280.]

### *Discussion*

In his Supplemental Briefing, Defendant argues that the drug testing he underwent violated *Stephens* because the testing was administered for penological rather than treatment purposes. (*See* Def's Supp. Brief. at 6.) In *Stephens*, the Ninth Circuit noted that although it was the district court's, and not the probation officer's, duty to set the maximum number of drug tests that a released offender must undergo, the courts are not required to "micromanage drug treatment programs." 424 F.3d at 883. Instead, district courts are permitted to delegate the details of drug testing when the testing occurs within the treatment context:

> Where the district court specifies that the defendant shall participate in a drug treatment program, it may properly delegate to the probation officer the responsibility for selecting the program. The drug treatment professionals then have the responsibility to design the course of

>   treatment, including the frequency of in-treatment testing, to ensure that
>   the treatment is effective.

*Id.* In other words, the district court must only specify the maximum number of tests when testing is "done as a mandatory condition of supervised release." *Id.* at 884. Here, Defendant argues that the drug testing that led to the proceedings regarding the revocation of his supervised release were administered as a mandatory condition of a supervised release and, as such, violated *Stephens*. (Def's Supp. Brief. at 2.) The question before the Court is whether the drug testing occurred as part of the treatment or for penological reasons.

### I. Judge Enright's Probation Condition

Defendant first argues that a literal reading of the condition imposed by Judge Enright regarding drug treatment demonstrates that the drug testing that the Defendant underwent was administered for penological reasons. (Def's Supp. Brief. at 3.) In the Court's denial of Defendant's previous Motion to Dismiss, the Court held that drug testing the Defendant did not violate *Stephens* because it was administered pursuant to Judge Enright's first condition of probation requiring that Defendant "participate in an alcohol or drug counseling program as directed by the Probation Officer." (Order Denying Def's Mot. to Dismiss at 7.) Although Judge Enright's order requires Defendant to undergo a drug counseling program, it makes no mention of drug testing as a part of that drug counselingt program. Defendant argues that *Stephens* requires explicit language providing for drug testing a released offender and Judge Enright's failure to include such language renders any testing administered penological in purpose. (Def's Supp. Brief. at 3.) In *Stephens*, however, the Ninth Circuit makes clear that a district court acts properly by delegating to a probation officer or drug treatment professional the course of treatment, including the frequency of testing. 424 F.3d at 883. This frequency can include little or no testing. As such, *Stephens* does not require a district court to set forth mandatory testing in its charge that an offender undergo appropriate drug treatment. Here, Judge Enright properly permitted the probation officer to determine the direction the drug counseling should take. The probation officer utilized these tests as a means to determine whether Defendant should be required to attend group counseling sessions. (*See* Gov't's Supp. Brief. Attach. 1 at 2.) Defendant was tested and required to attend the counseling that the court

ordered depending on the results of those tests. (*Id.*) Thus, the testing was a means to fulfill Judge Enright's order that the Defendant receive drug counseling when appropriate. Accordingly, the Court **FINDS** that the drug testing was properly administered for treatment purposes under Judge Enright's order.

## II. Documentation Provided by Probation Services

Defendant also argues that the documents outlining the counseling and drug testing of Defendant submitted by Probation Services establish that the drug testing was not done for treatment purposes. (Def's Supp. Brief. at 3.) Defendant states that since testing long preceded his required attendance in drug counseling sessions, the testing could not have been for treatment. (*Id.*) Defendant fails to consider the relationship between the testing and the group counseling sessions. After an initial determination that counseling was unnecessary for treatment, the probation officer assigned drug counseling when Defendant failed drug testing and admitted to drug use. (*See* Gov't's Supp. Brief. Attach. 1 at 2.) This evidence suggests that the drug testing was used to determine the necessity of group counseling sessions and, as such, was a natural extension of Defendant's treatment program.

Additionally, Defendant asserts that the drug testing that led to the four allegations of noncompliance were not part of treatment because they occurred after Defendant completed his final session of group counseling. (*See* Def's Supp. Brief. at 5.) This argument is without merit. Although Defendant did not attend the recommended group counseling during the time frame of his stalls, the drug testing was still a part of his ongoing drug treatment. Continuous group counseling is not an absolute requirement of drug treatment, particularly where testing and counseling are recommended and a requirement for group counseling is reimposed after a failed drug test. Here, the drug testing, the subsequent stalls, and required group counseling sessions were directly related. The timing of the group counseling in relation to the failed tests actually establishes that the testing was done for treatment purposes. After being ordered by Judge Enright to determine the appropriate counseling program for Defendant, the probation officer relied on drug testing to determine the direction and extent of Defendant's group counseling sessions. (*See* Gov't's Supp. Brief. Attach.

1 at 2.)  Whether a test result was negative or positive determined whether Defendant was required to participate in further counseling.  When Defendant failed testing, his probation officer would reassign counseling instead of revocation.  (*See* Gov't's Supp. Brief. at 6.)  The probation officer's system was also pursuant to the MHS' recommendation that Defendant under go further drug testing and counseling after his final group counseling session.  (*See* MHS Monthly Treatment Report at October 2003.)  Since the drug testing was administered pursuant to MHS' treatment recommendation and used to direct Defendant to group counseling sessions when appropriate, the testing was part of Defendant's treatment program.  As such, the Court **FINDS** that testing was done for treatment purposes even though the Defendant was not attending group counseling sessions at the time of testing.

## *Conclusion*

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss Supervised Release Revocation Proceedings.

**IT IS SO ORDERED.**

DATED: October 9, 2007

HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties of Record